IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2007

VERICO DEWAYNE JACKSON v. STATE OF TENNESSEE

Appeal from the Criminal Court for Shelby County
No. P-26469     Joseph B. Dailey, Judge

No. W2006-00502-CCA-R3-PC  - Filed December 18, 2007

The Appellant, Verico Dewayne Jackson, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief.  Jackson, who was convicted of first degree murder, is currently serving a sentence of life imprisonment with the possibility of parole.  On appeal, he argues that he was denied his Sixth Amendment right to the effective assistance of counsel, specifically arguing that trial counsel was ineffective in: (1) failing to adequately communicate with Jackson and the investigator assigned to the case, resulting in a lack of preparation for trial; (2) failing to seek a severance in the case; and (3) failing to request and argue for certain lesser-included offense instructions.  After review, the judgment of the post-conviction court is affirmed.

Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Joshua B. Spickler, Memphis, Tennessee, for the Appellant, Verico Dewayne Jackson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; and Greg Gilbert, Assistant District Attorney General, for the Appellee, State of Tennessee.

OPINION

Factual Background

The relevant underlying facts of the case, as established on direct appeal, are as follows:

In 1996, Charles Thompson and [the Appellant] were both high-ranking members of a gang called the "Traveling Vice Lords."  On April 19, 1996, Charles Thompson was incarcerated in the Shelby County Justice Center where he had a verbal altercation with a Sergeant Dedrick Taylor, a Justice Center employee.  Following that altercation, Charles Thompson telephoned [the Appellant] at a local

apartment and told [the Appellant] that he wanted Sergeant Taylor killed and that he wanted to see news of the killing on television the next morning. [The Appellant] then related that conversation to other members of the gang who were present in the apartment. [The Appellant] and the other members of the gang armed themselves and left the apartment. They walked toward the street on which Sergeant Taylor and his wife lived. [The Appellant] then told the other gang members to kill Sergeant Taylor. Shortly thereafter Sergeant Taylor pulled into his driveway where he was shot several times. His wife heard gunshots, but did not see who shot Sergeant Taylor. Sergeant Taylor died from the gunshot wounds.

Margaretta Dotson, a woman who was with the gang members earlier in the evening, heard gunshots coming from the area of Sergeant Taylor's house. Immediately after hearing the shots, she saw all of the gang members run and jump into a car and drive away. She then returned to the apartment that Charles Thompson had phoned earlier; there she found [the Appellant] and the other gang members. They all watched the local news, and saw a report about the shooting of Sergeant Taylor. When the news report aired, [the Appellant] and the other gang members celebrated and made "gang-signs" to one another.

*State v. Charles Thompson and Verico Jackson*, No. W1998-00351-CCA-R3-CD (Tenn. Crim. App. at Jackson, Aug. 9, 2001). A Shelby County grand jury subsequently indicted the Appellant and Thompson for first degree murder and conspiracy to commit first degree murder. *Id*. Because the State was seeking the death penalty, two attorneys were appointed to represent each defendant. Following a joint May 1998 trial, the jury convicted the Appellant and Thompson as charged; however, the trial court subsequently dismissed the conspiracy conviction on double jeopardy grounds. *Id*. Thompson was later sentenced to life without the possibility of parole, and the Appellant received a sentence of life with the possibility of parole. *Id*. The Appellant's conviction was affirmed on direct appeal. *Id*.

On May 24, 2002, the Appellant timely filed a *pro se* petition for post-conviction relief, alleging, among other grounds, ineffective assistance of counsel. Following the appointment of counsel, amended petitions were filed. A hearing was held on July 7, 2005, at which the Appellant and one of the attorneys who represented him at trial ("trial counsel") testified.[1] The Appellant stated that he felt that his attorneys had not visited with him sufficiently and had not discussed the defense strategy at all. According to the Appellant, he believed that he was being prosecuted as a principal in the crime until he arrived at trial. He did acknowledge one meeting with trial counsel during his incarceration and that he spoke with both attorneys at his court appearances. However, the Appellant testified that nothing was discussed at these meetings with counsel other than their urging him to testify against his co-defendant. The Appellant did, nonetheless, acknowledge that he met with David Watson, an investigator, at least once a month while his case was pending.

---

[1] It was noted during the proceeding that the Appellant's other attorney was unable to testify due to serious health problems.

According to the Appellant, he and Watson did speak about potential witnesses and defense strategy. Moreover, the Appellant acknowledged that Watson had contacted all the potential witnesses and had attempted to speak with each of them. However, according to the Appellant, when he did speak with trial counsel, counsel seemed unaware of what he had discussed with Watson, as well as any results of his investigation.

Trial counsel testified that he did only meet with the Appellant at the penal farm on a couple of occasions but noted that he spoke with him at great length at each court appearance. Moreover, counsel stated that he was in contact with Watson through the entire process, speaking with him three or four times per week. Trial counsel also testified that the Appellant was furnished all discovery materials. According to trial counsel, they proceeded to trial with a strategy of establishing that the Appellant had not received a phone call from Thompson, nor given any order to murder Sergeant Taylor. Trial counsel acknowledged that they purposely chose not to seek a severance of the defendants because the State was seeking the death penalty, and they wanted the jury "to have somebody . . . to compare my client to when they're back there thinking about the death penalty . . . ." Counsel testified that they did attempt to raise the issue on appeal; however, a panel of this court refused to address the issue because it was waived. He also stated that he did not seek an instruction on certain lesser-included offenses because to do so would have been in conflict with their defense strategy that the Appellant was not guilty of any offense.

After taking the petition under advisement, the post-conviction court denied relief by written order on February 14, 2006. This appeal followed.

**Analysis**

On appeal, the Appellant has raised the single issue of ineffective assistance of counsel. To succeed on a challenge of ineffective assistance of counsel, the Appellant bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). The Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id.* at 461. "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law*, are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id.*

On appeal, the Appellant is specifically alleging ineffective assistance of counsel based upon trial counsel's: (1) failure to adequately communicate with the Appellant and to follow-up with the investigator, resulting in the Appellant not being prepared for trial; (2) failure to seek a severance from the co-defendant in the case; and (3) failure to request and argue for certain lesser-included offense instructions. In denying the Appellant relief, the post-conviction court found:

> . . . [Trial counsel] explained in considerable detail that he and [co-counsel] did, in his opinion, visit their client sufficiently in jail and in the courtroom prior to trial. He further explained what motions had been filed and why certain other motions were not filed. As an example, he explained that a severance motion was not filed or sought because from a tactical point of view, he and [co-counsel] deemed it advantageous to their client to have him sitting next to the codefendant during the trial in light of the codefendant's greater degree of culpability. The concept of criminal responsibility was fully explained to the [Appellant] before the trial began and they pursued their defense with the knowledge of that concept in place. Certain lesser offenses were not requested again for tactical reasons. All witnesses that were deemed to have been helpful to the [Appellant] were called at trial and the cross-examination and final arguments that were engaged in by [trial counsel] were all more than adequately conducted. The appellate process was likewise properly pursued and more than adequately handled.

> After a full and complete review of the record in this case, both from the trial and from the post-conviction hearing conducted before this Court, it is this Court's opinion that each and every complaint set forth by this [Appellant] is without merit. It is the judgment of this Court that [trial] counsel represented this [Appellant] extremely well at trial under the circumstances and were in no way ineffective. That the [Appellant] did not receive the verdict that he had hoped for is not the standard by which the effectiveness of [trial] counsel should be measured. These two defense attorneys clearly met and exceeded the standard set forth in *Baxter v. Rose* . . . .

**I. Communication/Preparing for Trial**

First, the Appellant argues that trial counsel failed to sufficiently communicate with him or with the investigator, which resulted in the Appellant not being properly prepared for trial. Specifically, the Appellant alleges that he "was unable to fully and adequately participate in his own defense . . . [because] counsel did not maintain adequate contact with him prior to trial so that he was fully aware of the charges against him." According to the Appellant, "he was surprised at the strategy of the State and unaware of exactly how the State intended to prove the charges against him[,] . . . [causing the] Appellant to be unable to provide certain witnesses that could have provided good defense testimony . . . ." He also contends that trial counsel did not discuss the facts of the case with him but, rather, seemed interested only in discussing whether he would consider testifying against co-defendant Thompson.

Initially, we are constrained to note that trial counsel's testimony materially conflicted with the Appellant's testimony on numerous points. Trial counsel specifically testified that the Appellant was aware of the theory of the State's case in prosecuting him and that he had been provided all the discovery materials in the case. Moreover, he testified that while he only visited the Appellant at the penal farm on a couple of occasions, he did speak with him at all court proceedings, which he felt was sufficient. Moreover, despite the Appellant's contention to the contrary, trial counsel stated that he communicated with the investigator at least three to four times per week and was aware of the facts related by the Appellant to the investigator.

Clearly, the post-conviction court accredited trial counsel's testimony over that of the Appellant. Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial court as the trier of fact, and those determinations are conclusive on appeal unless the evidence preponderates otherwise. *Odom*, 928 S.W.2d at 23. We find nothing in the evidence before us which preponderates against the post-conviction court's determinations. Thus, the Appellant has failed to show by clear and convincing evidence that trial counsel was ineffective in consulting with and preparing the Appellant for trial. Additionally, we would note that, although the Appellant asserts that he would have prepared for trial differently had he known how the State intended to proceed, namely by calling certain witnesses that could have provided beneficial defense testimony, the Appellant failed to call those witnesses to testify at the hearing. It was the Appellant's burden to produce these witnesses at trial, without which prejudice cannot be established. *Black v. State*, 794 S.W.2d at 757.

## II. Motion for Severance

Next, the Appellant contends that trial counsel was deficient in failing to file a motion for severance in the case. Trial counsel did acknowledge that no such motion was filed and, further, acknowledged that when the issue was raised on direct appeal, a panel of this court found the issue to be waived because it had not been previously raised. According to the Appellant, trial counsel's failure resulted in a "circus" of discredited and dangerous witnesses that his co-defendant paraded in front of the jury.

The post-conviction court, in denying relief on this ground, found that trial counsel made a tactical decision not to seek a severance in the case. Trial counsel specifically testified that he felt that it was an appropriate strategy to have the Appellant compared to the more culpable co-defendant during the trial. This court has repeatedly held that we cannot second-guess a tactical and strategic choice made by trial counsel unless those choices were uninformed because of inadequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982); *Alley v. State*, 958 S.W.2d 138, 149 (Tenn. Crim. App. 1997). "Trial counsel may not be deemed ineffective merely because a different procedure or strategy might have produced a different result." *Alley*, 958 S.W.2d at 149. The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House v. State*, 44 S.W.3d 508, 515 (2001).

We conclude that counsel's decision not to seek a severance in order to contrast the Appellant's culpability in the crimes with that of his co-defendant's appears to have been informed and based on adequate preparation. Thus, we may not second-guess counsel in this regard. Moreover, we are constrained to note that the Appellant has failed to make specific allegations or citations to the record of how trial counsel's failure to seek a severance resulted in ineffective assistance. Rather, he makes only the blanket allegation regarding his co-defendant's "circus" of witnesses. That alone is insufficient to establish an ineffective assistance claim. Moreover, we would further note that the issue of severance was considered on direct appeal with regard to co-defendant Thompson, and no error was found. *Charles Thompson and Verico Jackson*, No. W1998-00351-CCA-R3-CD. Thus, our review of the record reveals that the Appellant has failed to establish ineffective assistance of counsel upon this factual claim.

## III. Lesser-Included Offenses

Finally, the Appellant asserts that trial counsel was ineffective based upon his failure to request an instruction on certain lesser-included offenses, namely solicitation and facilitation to commit first degree murder. According to the Appellant, because the State never alleged that he was the primary actor in the murder, trial counsel should have requested that these instructions be given. The Appellant argues that "[h]ad the jury the opportunity to consider that [the] Appellant was only a messenger that allegedly relayed a direct order from his co-defendant, it is very likely, especially considering the questions they passed forward during deliberations, that they would have come to a different verdict."[2]

The law in Tennessee is clear that "the issue of lesser included offenses is controlled by the prevailing law at the time of trial . . . ." *Chivous Robinson v. State*, No. E2005-01036-CCA-R3-PC (Tenn. Crim. App. at Knoxville, May 19, 2006) (citing *Wiley v. State*, 183 S.W.3d 317, 328 (Tenn. 2006)). Thus, we must look to the law of lesser-included offenses as it was defined in May 1998, which was set forth in *State v. Trusty*, 919 S.W.2d 305, 310 (Tenn. 1996). There is no dispute that facilitation and solicitation were in fact lesser-included offenses of first degree murder. *Trusty*, 919

---

[2] As noted by the State, the record before us does not contain a record of any questions asked by the jury during deliberation.

S.W.3d at 314; *State v. Kathy Ball*, No. 03C01-9512-CC-00387 (Tenn. Crim. App. at Knoxville, Oct. 31, 1997).

As noted, trial counsel acknowledged that the lesser instructions were not requested based upon tactical reasons. According to counsel, the theory of defense which they chose to pursue was one of "all or nothing," that being that the Appellant had not received the phone call from co-defendant Thompson and that the Appellant had not ordered anyone else to shoot the victim. Trial counsel testified that, at the time of trial, the issue of lessers was "clouded" and that he could not request a lesser charge that was inconsistent with his defense of the case.

We find nothing in the record to preponderate against the post-conviction court's finding that the decision not to request the lesser-included instructions was a tactical one. As previously noted by this court, it "would be illogical to conclude that Counsel was deficient because he did not demand that something occur which, in his strategic opinion, would be detrimental to the defense of his client." *Carl Anthony Watson v. State*, No. W2005-02324-CCA-R3-PC (Tenn. Crim. App. at Jackson, Apr. 20, 2007). Moreover, it was the responsibility of the trial court to instruct the jury on all applicable lessers, and the court had a duty to charge on lessers only when the evidence "viewed in the light most favorable to the defendant's theory of the case, would justify a verdict in accord with the defendant's theory, and would permit a rational trier of fact to find the defendant guilty of the lesser offense and not guilty of the greater offense." *State v. Elder*, 982 S.W.2d 871, 877 (Tenn. Crim. App. 1998).

After a review of the record before us, we must conclude that the evidence presented does not preponderate against the post-conviction court's finding that trial counsel was not deficient. Clearly, counsel's efforts at trial achieved a measure of success, as the Appellant was spared the punishment of death, as vigorously sought by the State. The record before us reveals that trial counsel sufficiently communicated with the Appellant, investigated the case, and was prepared for trial. Thus, the Appellant's assertions are without merit.

### CONCLUSION

Based upon the foregoing, the Shelby County Criminal Court's denial of post-conviction relief is affirmed.

_____
DAVID G. HAYES, JUDGE